LAW OFFICES OF RAHUL WANCHOO
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (646) 593-8866
Fax:    (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BONYAD SHIPPING CO. ("BOSCO")

              Plaintiff,

- against -

CALDER SEACARRIER CORP.

              Defendant.

------------------------------------------------------------X

JUDGE RAKOFF

08 CV 2529

ECF CASE

08 CV ____ (___)

**VERIFIED COMPLAINT**

Plaintiff, BONYAD SHIPPING CO. ("Plaintiff"), by its attorneys, LAW OFFICES OF RAHUL WANCHOO, alleges on information and belief as follows:

### JURISDICTION AND VENUE

1. This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and within the admiralty and maritime jurisdiction of the United States and of this Honorable Court. This case also falls under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Finally, this Court also has jurisdiction over this matter because the action also arises under the convention on the Recognition and Enforcement of Foreign Arbitral Awards,

codified at 9 U.S.C. §201 *et. seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et. seq.*

2. At all material times, Plaintiff was and now is a foreign corporation organized under and existing by virtue of the laws of a foreign country, and is the time chartered owner of the M.V. BSLE EMPRESS (the "Vessel"), a bulk carrier of about 21,000 deadweight tons capacity engaged in the carriage of bulk cargo by water.

3. Upon information and belief, at all material times, Defendant, CALDER SEACARRIER CORP. ("Defendant") was and now is a foreign corporation organized under and existing by virtue of the laws of a foreign country, and was the charterer of the Vessel.

## FACTS GIVING RISE TO CLAIM

4. On or about November 7, 2007, a voyage charter party (the "Charter") was made between Plaintiff, as time chartered owner of the Vessel, and Defendant, whereby Defendant chartered the Vessel for the carriage of a full and complete cargo of steel pipes from 1-3 safe ports in China – Singapore range for discharge at 1-3 safe ports in the Mediterranean, at charterer's option.

5. The Charter provided a total laytime of 10 weather working days of 24 consecutive hours for loading and discharging, Saturdays, Sundays and Holidays excluded even if used. Time from Friday 5 p.m. or 5 p.m. before a holiday till 8 a.m. Monday or 8 a.m. next working day not to count as laytime even if used. Demurrage was payable by Defendant to Plaintiff at the rate of $25,000 per day or pro rata for all time that loading and discharging exceeded the allowed laytime. The Charter also provided that laytime will start running at first loading port at 2 p.m. and first

discharging port at 8 a.m., and at all extra ports immediately on Vessel's arrival if during ordinary working hours, otherwise from first official resumption of work after arrival, unless Vessel on demurrage in which case laytime will count immediately on arrival.

6. Pursuant to the Charter the Defendant ordered the Vessel to Lianyungang, China to load the steel cargo. The Vessel arrived at Lianyungang on December 16, 2007 at 1700 hrs and tendered her notice of readiness (NOR) which was accepted as per the terms of the Charter. Between 1700 hours to 2110 hours, the Vessel prepared her holds for loading. The Vessel commenced loading steel pipes at 2140 hours on December 16 and completed loading at 1130 hours on January 3, 2008. According to Plaintiff's laytime calculations the Vessel was on demurrage from 0400 hours on January 2 to 1130 hours on January 3, or 1.3125 days as the Charter provided for a total laytime of only 10 weather working days.

7. The Vessel arrived at the first discharge port, Koper, Slovenia at 0012 hrs on January 31, 2008 and tendered her notice of readiness and berthed at 2212 hours the same day. The Vessel commenced discharge at 0700 hours on February 1 and completed discharge at 1615 hours on February 4, 2008. As per the terms of the Charter, laytime commenced immediately on arrival at 0012 hours on January 31 as the Vessel was on demurrage when she arrived at the port. As per Plaintiff's laytime calculations the Vessel was on demurrage at Koper for 4.47430 days.

8. The Vessel arrived at the second discharge port, Djendjen, Algeria at 0600 hours on February 8, 2008 and waited for her berth. The Vessel berthed at 0754 hours on February 9 and commenced discharging at 1030 hrs on the same day. The Vessel completed discharge at 1806 hours on February 19. As per the terms of the

Charter laytime commenced at 0600 hours on February 8, 2008 when the Vessel arrived at the port. As per Plaintiff's laytime calculations the Vessel was on demurrage at Djendjen for 11.45972 days.

9. Thus, according to Plaintiff's laytime calculations, the Vessel was on demurrage during the voyage for 17.24652 days which amounts to $431,163.00 (17.24652 days x $25,000 per day or pro rata).

10. Plaintiff has submitted its Debit Note for demurrage together with all supporting documents to Defendant in the amount of $431,163.00 with instructions for payment on receipt. However, despite various reminders from Plaintiff to Defendant, no demurrage has been received to date. On March 6, 2008 Plaintiff pursuant to the terms of the Charter demanded arbitration of its demurrage dispute with Defendant.

11. By reasons of the premises, Plaintiff has sustained damages in the amount of $431,163.00 as best as can presently be calculated.

12. The Charter provides that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in London with English law. In addition to the full principal amount of the demurrage claim outlined above, Plaintiff also seeks an attachment over an additional sum to cover interest as well as its anticipated attorneys' fees and costs, all of which are recoverable in London arbitration. (See *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002), where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.")

13. Plaintiff estimates, as best as can be presently calculated, these additional damages and costs to be $159,344.84, comprised of interest in the sum of $59,344.84

(computed on the principal amount of the demurrage owed of $431,163.00 at a rate of 6.5% compounded quarterly for a period of 24 months), and $100,000.00 estimated English counsel fees and arbitrators' fees which will be incurred in conjunction with the London arbitration, and which are recoverable there.

14. Plaintiff's total claim against Defendants for which it seeks security herein is $590,507.84 ($431,163.00 + 59,344.84 + 100,000.00).

15. All and singular the premises are true and within the admiralty and maritime jurisdiction of this Honorable Court.

16. Plaintiff brings this action by seeking an order of seizure of Defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process, in the amount sued for herein, so that the Court shall have jurisdiction to direct Defendant to proceed with arbitration of Plaintiff's claim against Defendant and to retain jurisdiction to enter a judgment upon the arbitration award in the London arbitration.

**WHEREFORE,** the Plaintiff prays the following:

1. That process in due form of law according to the practice of this Court in causes of admiralty and maritime jurisdiction may issue against Defendant, Calder Seacarrier Corp., that it be personally cited to appear and answer the matters set forth above;

2. That if the Defendant cannot be found within this District, then that Defendant's goods and chattels, or credits and effects within the hands of garnishees within the jurisdiction of this Court be attached by process pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims and in an amount sufficient to answer Plaintiff's claims

of $590,507.84, the sum sued for in this Complaint;

3. That the action thereafter be stayed pending the arbitration award and that a judgment be entered upon the award of the aforesaid arbitration for the amount of any recovery by Plaintiff, together with interest, costs and disbursements of this action; and

4. That this Court grant to Plaintiff such other and further relief as may be just and proper in the circumstances.

Dated: New York, New York
       March 12, 2008

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
BONYAD SHIPPING CO.

By: *Rahul Wanchoo*
    Rahul Wanchoo (RW-8725)

## **VERIFICATION**

STATE OF NEW JERSEY )
                            ss.
COUNTY OF BERGEN    )

I, Rahul Wanchoo, being duly sworn, deposes and says:

I am an attorney at law and a member of the firm of Law Offices of Rahul Wanchoo, attorneys for Plaintiff.

I have read the foregoing Verified Complaint and know the contents thereof and the same are true to the best of my knowledge, information and belief.

The reason that this verification is made by me and not by Plaintiff is that Plaintiff is a foreign corporation and is not within this District.

_____
Rahul Wanchoo

Sworn to and subscribed to
before me this 12th day of March, 2008.

_____
Notary Public

Michael C. Zeale
Notary Public State of New Jersey
My Commission Expires
August 8, 2010